18-1909, 18-1988, Lou's Transport Incorporated, et al. v. the National Labor Relations Board oral argument not to exceed 15 minutes per side. Mr. Wright for the petitioner's cross-respondence. Good afternoon. May it please the court, Steven Wright for the petitioner, Lou's Transport and TKMS. If I may reserve two minutes for rebuttal. The underlying issue that we believe in this case is that Mr. Hershey made more money in his interim employment than he would have if he stayed at TKMS yet worked over 1,100 hours less. And somehow the board has come up that there should be net back pay and interim expenses and 401k obligations, all of which we believe should not be here. What I would like to do with my time is first address the interim expenses and if there's any remaining time, address the net back pay issue where they treat overtime and regular time differently. With respect to the interim expenses, Mr. Hershey worked at TKMS and Lou's for more time than he, for more time at the Flat Rock Yard than he worked in Pontiac. He started in Pontiac. After three and a half months, he went to the Flat Rock Yard. It is absolutely undisputed that while he was at the Flat Rock Yard, he did not get any additional compensation. He did not get travel expenses. He didn't get anything. And in fact, he acknowledged that in his worker's compensation claim that during his travel times to and from the TKMS yard at Flat Rock, he did not get any compensation. So when the board suggests that, oh, he wasn't an employee who was going to the Flat Rock Yard, he was going to the Pontiac Yard, which is much closer to his home, they then come up with an inflated number for interim expenses because now they say he had to travel for his job another 80 miles than he actually did. Isn't that a question for the ALJ and the board to determine credibility and to decide whether they believe Hershey's testimony over the company's testimony? But Hershey's testimony, for the most part, was exactly the same. Hershey's testimony was that I was not paid while I was there. My last day of work, I was at the Flat Rock Yard. The testimony was there was no time when he wasn't going to be at the Flat Rock Yard. What Mr. Hershey's testimony was that a month after I left, I went by and I saw other trucks at the Flat Rock Yard. That was what his testimony was. The job had been lost and some other entity was servicing that contract, wasn't it? No, that was not. He said I drove by our trucks where I had worked were not there? Well, with respect to that, that yard is only for Luz and TKMS. It's not for anyone else. So I'm not sure with respect to that particular thing. I do know what you're referencing, but my understanding was what he was saying with respect to that when I went by one month and I saw it, not that we didn't still have the contract or any of that, but that in fact what had happened was that he seemed to think that for some reason he wouldn't have been working there anymore. But that's not the testimony and that's pure speculation with respect to that he wouldn't have been working there, especially with the testimony that he would have been working there and that every single day after Mr. Hershey left for the two and a half years of the back pay or the three and a half years of the back pay, there was some quad drivers working at the Flat Rock Yard. That evidence was undisputed and all we have is the speculation of the ALJ with respect to that. More importantly, let's assume for a moment that you take the ALJ, you take the credibility issue or whatever and you say there is substantial evidence with respect to what the ALJ assumed. We come to the point with respect to the interim expenses where why are the interim expenses not offset against the interim earnings? So let me give you an example. Well, doesn't King Soopers resolve that? You've got a case which says we're changing the way that we do this. We have determined that interim expenses will no longer be deducted from interim earnings and that was done in 2016 and the D.C. Circuit affirmed that in relevant part in 2017. But what King Soopers did and what the D.C. Circuit affirmed was that work search and interim employment expenses would be treated independently from back pay, that they would be treated independently. Nothing in King Soopers says that mileage or any of these other interim expenses. They specifically wanted to deal with interim employment expenses and search for work expenses. Did they specifically say that no other expenses will be treated this way or were those just the expenses that they addressed in King Soopers? Those are the expenses they addressed in King Soopers. Then why can't the board, why isn't the board within its authority to say that King Soopers addresses all interim expenses and from now on we're going to treat all interim expenses that way and not deduct them? Because I don't believe that's what King Soopers held. I don't believe that anything in the board has exercised its authority and its discretion to say this is what we meant in this case. It's been affirmed by a court of appeals and this is the way we interpret it. Isn't that their prerogative? It would certainly be, the board can certainly decide what it wants to with respect to that. However, in King Soopers, nothing in the affirmed, nothing in the D.C. Circuit did changes the did not go as far as now you're suggesting the board wants to go with respect to this. Here is the issue here. If that's the case, it is fundamentally unfair when the standard is to put you the economic status quo, you put them back in the economic status quo they would have been in but for the unlawful conduct. Well, here if you take just the fourth quarter of 2015, Mr. Hershey made $2,400 more working at his new job than his old job. You're sort of shifting over, aren't you, to the hours versus the expenses. Can I stay on expenses? You used the term interim employment expenses as though that was necessarily different from this mileage. Can you explain that? Because to me, driving extra miles would be an employment expense. So was there something you meant specifically? Well, the interim employment expenses that King Soopers was talking about was stuff with respect to finding a job. Those were the expenses, not mileage expenses or things like that. Expenses related to finding a job. So when you said work search and interim employment expenses, you're saying that's really only one thing. Well, the actual search going out to finding work and then any expenses you have with respect to that, at least that's how we read King Soopers, that there's two discrete things. My point to address the mileage But I guess to push that, on the one hand, you have to go out and spend money to get the job, King Soopers. In this case, assuming that he's right about the Pontiac Flat Rock issue, you have to spend extra money to get to the job. Why should that be really any different? Because I think that with respect to the interim employment expenses, we're not talking about once he got another job, at least as I read King Soopers. It's those expenses incurred to obtain or to get it. Now I understand the conceptual point you're making, but I'm putting it back to you. If in order to get the paycheck, on the one hand, you have to find the job. On the other hand, you have to get physically to the job. Why should that be any different? It's different in this respect. Once you get the job, if you make more money, fundamental fairness and the standard that the board has always used about putting someone in the status quo suggests that if you make $2,400 more in net back pay during a pay period, and you have $2,400 in expenses, those should be netted. Nothing the board has ever said would take away from that. The dissent in the D.C. circuit suggested there could be a windfall if you read King Soopers, even with respect to just the work search and the interim employment expenses that way. What is the best case for saying that if you get more back pay, that it should be netted against expenses? Or best opinion? I would suggest anything pre-King Soopers suggests that that is the rule. King Soopers, nothing from King Soopers says that you don't net them. In fact, you should. I can understand where King Soopers says, hey, if you've got interim employment expenses or you've got something, it's unfair to not at least not get paid for those or not net those because that was pre-King Soopers, they weren't netted. But all we're suggesting now is if you're going to do that, at least net them. If you're going to net them a windfall, you should net those two. So in my example, fourth quarter of 2015, $2,400 more in employment expenses paid. That's off the table. We get nothing. $2,400 in interim expenses. So he ends up with $2,400 when he should have ended up with zero. You're able to keep saying he gets $2,400 more. Am I wrong? Is he actually works more hours than he did or would have? No. The point is that's the amazing thing about this. Every job he got when he left us, he got paid more per hour. So when I said at the beginning that he actually during this time period made more money and worked 1,130 hours less, that's why it's important. If the board wants to say we'll net these but we've got to equate hours or somehow make sure that the hours are the right hours, that would be something different. But here they're saying I'm going to completely disregard any net pay where it would inert to our favor, the position's favor, yet we're going to give him all these interim expenses. That to me is not in any way putting someone in the status quo. That's giving someone a benefit. I think part of the underlying concern with the attempt to dispute how interim earnings function after King Soopers is the concept that this employee would not be in the situation of having to find other work and having to pursue other work that may be short-term, may not be a long-term job, but that that employee is back out on the job market because of something wrong that the employer did. We're not suggesting that that person, in that hypothetical, because Mr. Hershey only worked two weeks and he found another job, in that hypothetical, that that person wouldn't be entitled to seek those damages. What we're suggesting is if you make more money at your new job, you should at least net any expenses, claimed expenses that you have. We're not even suggesting pre-King Soopers that you don't actually get those, whereas pre-King Soopers you're lucky you didn't get them. What we're suggesting is if you're going to, if you were going to net them before and not give someone that, you should now not just say we're going to treat them separately. You should instead say that you're going to net them and the chips fall where they may with respect to that. Your argument is that you think you have a different view of King Soopers. Not only do I have a different view of King Soopers, I believe the law requires a different view of King Soopers and what the board is suggesting. Which law would say that King Soopers is inappropriately interpreted or is an incorrect decision in light of the D.C. Circuit's affirmance of Soopers? First of all, I do believe that the D.C. Circuit did not go as far as mileage expenses, but more importantly, the Constitution, fundamental fairness says you can't penalize the employer. Here, if you don't net these, you are penalizing the employer. I see my time is up. You can continue your answer. So the answer is that fundamental fairness, the Constitution requires that it not be a penalty. Here, if you don't net these, it's a penalty. Did you raise that before the board? Yes, we did. You raised due process and equal protection fundamental fairness claims before the board. Yes, we did. I believe we did because they were in our brief, too. Would you please give us or supplement with a citation to your raising of that argument? Okay. Thank you. Thank you. Thank you, your honors. May it please the court. My name is Stephen Biestjot. I am counsel for the National Labor Relations Board. The board is seeking enforcement of a board order against Loose Transport Incorporated for back pay in the amount of $49,817 to an unlawfully discharged employee, Mr. Michael Hershey. The dispute in this case centers solely on whether the board exceeded or abused its wide discretion in calculating the specific amount owed. On April 6, 2016, this court enforced a board order, the underlying unfair labor practice in this case, finding that the employer unlawfully discharged Mr. Hershey in violation of the National Labor Relations Act for, among other things, complaining to co-workers about the unsafe trucks, being forced to work in hazardous conditions, and the company's refusal to pay for traffic tickets the employees incurred because of the bald truck tires that they were forced to drive. Pursuant to the board order, the board obtained from the company payroll records of comparably situated employees and obtained from Mr. Hershey's interim employers payroll records for Mr. Hershey's interim employment. On August 14, 2017, the board's regional office for the region in which the unfair labor practice occurred issued a compliance specification detailing the specific amounts that the company owed and had to pay Mr. Hershey in make whole relief. The company disputed those amounts for citing various reasons and a full hearing before an administrative law judge was held on the issue. The administrative law judge concluded that the amounts calculated by the region were fully reasonable. On July 24, 2018, a unanimous three-member board affirmed that ALJ decision, ordering the company to pay Mr. Hershey $49,817 in back pay and other make whole relief. One of the major arguments your opponent raised was that Mr. Hershey got more dollars per hour and worked fewer hours at his interim employment. How do you address that? That's correct, Your Honor, but the company still owed Mr. Hershey for other expenses that the company did not include in their own calculations. For example, all the interim commuting expenses that he was forced to drive further at interim employment than he would have had he not been unlawfully fired from the employer in the first place. Pursuant to established board precedent and policy, the board's policy is to compensate the discriminative for those losses. In addition to that, there are 401k benefits that Mr. Hershey would have continued to accrue had he not been unlawfully fired, including an employer matching contribution and any gains that the 401k would have made. Those were properly compensated for in the board's compliance specification. Those are elements of losses that would offset some of the positive amounts that he would have made that would have been higher than some of the earnings of the comparable employees. As I read the document, there's an amount for, quote, net back pay of $11,000 or $12,000. How does that come up? I understand the expenses in the 401k argument, but if your adversary is right that he got more money for less work, where does that net back pay come from? Well, he did not get more money for less work. The way the board calculates back pay is that it takes all the hours the comparable employee would have worked, multiply that by what the discriminantee would have made under the collective bargaining agreement, and then offset that amount with the amount of hours that he did work at interim employment times what he made at interim employment. But the board's policy, and it's a longstanding policy under their compliance manual which guides regional offices in computing these amounts and cites to board precedent, an employee is not to be penalized for extra hours that he worked in excess of the hours that would have been available to him at the original employment with the gross employer. So if Mr. Hershey worked... I agree with that, but is your adversary factually wrong about more money for less hours? Because I quite understand that, and when he said he made more money, my immediate thought was exactly what you said. But then he says more money for less hours, and then I'm saying are you disputing that, or is this the weekly computation versus the quarterly computation? So it's possible that the way that the company calculated back pay, it's possible that that would have been the outcome, but that's not the way that the board compensates discriminantees. What they'll do is they'll offset what the discriminantee makes at interim employment with the amount that the comparable employees make on any given quarter, and they'll add up all the hours that were the same work. But for every week in which a comparable employee worked more hours than were available to Mr. Hershey at interim employment, those hours are going to be compensated in his back pay because he would have been eligible for those extra hours at the original gross employer. And in addition to that, pursuant to longstanding board policy, the board is not going to penalize the discriminantee by forcing him to essentially give up the money he made working extra hours at interim employment in excess of hours that would have been available had he stayed with the gross employer. And so that's why there is a positive net back pay number, and there are policy reasons for that as well, Your Honor. If the board were to calculate back pay in such a way that it penalizes the discriminantee for working extra hours at interim employment, then the discriminantee can just not work as many hours at interim employment. I understand that statement. Yes, Your Honor. I'm just having a little trouble, and maybe I need to read the record better, connecting that with your adversary's factual view, which you don't seem to dispute. I mean, I fully understand that if he would have worked 40 hours and he only gets to work 30 hours at his new job, that he ought to get the excess of that. The question is, how does he get more money? Because he's getting a higher pay rate per hour? Is that the reason he can say what he says? Some of the jobs he worked were paid at a higher wage. Is that the prevailing wage versus the contract wage argument? No. There is an argument in there about that. Well, he would have gotten prevailing wage, and that was higher. No, that was a different argument. Sorry. That argument dealt with the comparable employees that were selected upon which to base Mr. Hershey's hours had he stayed with the employer and not been unlawfully discharged. And an increase that the comparable employee was eligible for, an intermittent $2 increase, that was also included. Try to just tell me very simply, if you can, how did he come out worse off on this pay part at his interim employment? Well, on just the back pay part? Yeah, that is usually it would either be he's not getting as much money or he's not getting as many hours. Right. So what's the truth in this case? Well, the truth is the board doesn't simply add up everything that he made at interim employment and compare it with everything he would have made had he not been unlawfully fired. I understand that. And so the way that the board does it is because they don't want to penalize the discriminantee for working extra hours and encouraging him to slack off. So on a weekly basis, those hours are going to be not subtracted from the back pay award. You're saying that he really did get that money because he did work more hours? On a weekly basis. Some weeks he worked more hours, some weeks he would have worked less. Okay. So you're saying what you really say is that when he worked more hours, you shouldn't penalize him for it. When he works less hours, he gets topped up to what he would have done at his old employment. Okay. Is that close to what your position is? That's exactly what the board did here. Even if his hourly pay is higher at the new job? Yes, Your Honor. He would not be penalized by reducing the back pay award by the extra hours he worked at interim employment. But I'm not saying he worked extra hours. I'm saying he worked fewer hours at interim employment but got more money per hour. There would be a net back pay award? Yes, for the extra hours. That would be included. Because other times he was under, is that right? That is, if there was nothing else happening and he used to get paid $15 an hour and his interim is $17 for exactly the same number of hours, then there would be no back pay. Is that right? Yes, exactly. If he worked 17 hours at each employer. Same hours, but now he's getting a higher pay rate and there's no other. A net back pay of zero, but for all hours worked in excess of those. All right, but it sounds like you're really saying that the weekly deficits get compensated even if there are benefits in some other week. Is that right? Yes, Your Honor. And looking at the last page of the supplemental order, which I think is the governing thing, net back pay was $11,683. There's bonuses. Then there's interim expenses, $21,000, 401K, 11, and that comes up to the $49,000. That's what we're talking about, right? Yes. Okay, so is part of your opponent's theory that the interim expenses of $21,000 should be netted against the net back pay to come up with a much smaller amount? My best understanding of what opposing counsel is proposing is that, yes, all the interim expenses that he was compensated for should simply not have been compensated or otherwise offset against the award, however you want to phrase it. Sorry, what's wrong with his argument? Well, it's under board precedent and policy. Commuting expenses and interim expenses and search for work expenses have been compensated by the board for 80-plus years, even before King Soopers. And so any losses he suffered as a result of the unlawful discharge and having to drive further to interim employment would be compensated even before King Soopers. And including, for example, unemployment compensation, which was some of the complaint here, because there have been decades, isn't that correct that the law has been clear that you may not offset unemployment compensation for the person who has been discriminated against? Yes, Your Honor, that is a Supreme Court case. The same is true for union dues. The same is true for uniforms that you would wear. All things that he would not receive the benefit of may not be deducted. Yes, there's no precedent that they cited that would require the board to charge an employee by reducing his back pay award for uniform fees or any fees the company would have charged because he was unable to keep his job. That is board precedent and policy, and that was followed here. In addition, the 401k benefits were properly awarded and properly calculated. Again, it's board precedent and policy that employees receive make-all compensation for all the 401k benefits that they've been deprived of as a result of their unlawful discharge. In fact, the board here was careful not to double-count those 401k benefits by reducing from his gross back pay the amount of contributions he made to the 401k benefits so that those are only included once in the award. In addition, the board based the 401k determination on the past practices of Mr. Hershey. He had been contributing 5% of his salary to a 401k prior to his discharge, and so the board concluded, based on past practice, that he would have continued that practice. The cutoff date for the 401k contributions was the first day that he was eligible for a 401k option at his new employer. That was the 401k period that the board used in calculating the amount. The company argues that 401k benefits should not have been included and that the board's use of the 401k equity fund to calculate those benefits was unreasonable. In this case, the specific fund to which Mr. Hershey had contributed was discontinued, and so the board had to find some other similar equity fund upon which to base the estimated gains that he would have made had he not been unlawfully fired and continued contributing to that 401k award. And so the board settled on a similar equity fund. The company disputes but provided no documents whatsoever as to other types of 401k plans that were still offered by the employer. And provided no evidence whatsoever that had he chosen one of those plans, he would have made less money in 401k gains. In addition, the opposing counsel makes a number of constitutional arguments, including due process and equal protection, for the first time here on appeal that were never raised at any part in the proceedings before the board and are in no part of the record whatsoever. Pursuant to Section 10E of the National Labor Relations Act, this court is jurisdictionally barred from considering those arguments, but in any event, they have no merit. The company was not deprived of due process by amendments to the compliance specifications. Rather, there's no evidence in the record whatsoever that any amendments to compliance specifications were made for any reason other than to make for a more accurate and reasonable approximation of the amount and make whole relief that Hershey was owed. And the company was not deprived of equal protection here. Rather, as shown in our brief and as shown in the compliance speculation, the board meticulously calculated every aspect of the back pay amount to ensure that Hershey was fully compensated for the many losses that he suffered as a result of the employer's unfair labor practice. In sum, the board reasonably calculated the back pay award to make Hershey whole, and it was well within the board's remedial discretion. Accordingly, the board respectfully requests the court to enforce the board's order in full. Thank you, Your Honor. I'll try to address, Judge Boggs, I'll try to address the issue that you raised. The way the calculation works is it's not weekly, it's quarterly. Every quarter the employee would have made so much money if he was working for us, and they determine what his hours were, and then they adjust those to make sure that they're the same. And in most of the quarters, what we found was that he made more money and would have made more money working at his interim job as opposed to our position. There were a couple of quarters that total up to the $11,000 when that was not the case. And more importantly with respect to that, part of the $11,000 relates to overtime because while they treated the wages on a quarterly basis, they treated overtime on a weekly basis. So what they did with respect to overtime is if he worked 30 hours of overtime, they did 15 one week, 15 another. So if in the first week he worked, you know... Okay, now I understand. But see, the overtime is important because they don't treat that quarterly, and so therefore they just do a different calculation for the overtime, which is pure speculation based on what he would have worked one week versus the next. Is that unique to this case or is that a practice? That is completely unique to this. We've never seen where they've taken overtime on a weekly basis, not even a bi-weekly basis like the payroll. That's the one case that they cite, and there's not enough information to determine why in that case, that single case, they did it. But here they have the information that he was paid every quarter, he was paid every two weeks to be paid for a quarter. I'm understanding this. If he worked 40 hours each week, no overtime, no problem. But if because the company says we really need you and you work 60 hours this week, 20 hours the next week, your side wants to say the extra money he makes, in effect, should go against him, and he's going to say, wait a minute, I worked 60 hours this week. I worked my butt off. Whereas if I just happened to be level 40-40, then I'd be okay? No, what I'm suggesting is sort of the opposite. So let me use your example. Let's assume that in a quarter, we're just going to treat a two-week pay period. His pay period, we don't know because those interim records are unavailable, but let's say he worked 40 hours of overtime in his interim employment. The board treated that as 20 hours here and 20 hours here. Then what they did is they said, well, we see by the pay records that Mr. Hershey would have worked, based on the comparables, 30 hours here and 10 hours here in those two pay periods. So what did they do? They say in this pay period, when he worked 10 more hours in that week, not quarter, that week, you have to give him that. But when he worked 20 hours less, we're not going to do anything. So even though they both worked 40 hours that one pay period, and it should have all netted out if you did it by pay period, when you net it by week, especially when you net overtime by week, when you're doing the rest of his pay by quarter, there's no rationale that's ever been stated for why you would do overtime every week and have to divide up a two-week pay period to do it when the quarter is for regular wages. Thank you very much. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?